UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LISA MCCUSKER and DANIEL MCCUSKER, * <br> * <br> Plaintiffs, * <br> * <br> v. * <br> * <br> OCWEN LOAN SERVICES, LLC, * <br> BANK NATIONAL ASSOCIATION, * <br> WILMINGTON FINANCE, INC., AND * <br> MORTGAGE ELECTRONIC SYSTEMS, INC.,* <br> * <br> Defendants. * | Civil Action No. 14-13663-MGM |

MEMORANDUM AND ORDER REGARDING
DEFENDANTS' MOTIONS TO DISMISS
(Dkt. No. 35)

July 27, 2015

MASTROIANNI, U.S.D.J.

## I.   INTRODUCTION

Lisa McCusker and Daniel McCusker ("Plaintiffs") bring this action against Ocwen Loan Services, LLC, Bank National Association, Wilmington Finance, Inc., and Mortgage Electronic Systems, Inc. (together, "Defendants"). On June 17, 2014, Plaintiffs originally filed this action in the Trial Court of the Commonwealth of Massachusetts, Superior Court Department, Berkshire County. (Dkt No. 1, Notice of Removal 1.) On September 22, 2014, Defendants removed this action to the U.S. District Court for the District of Massachusetts based on diversity jurisdiction. (Id. at 3-4.)

## II.   PLAINTIFFS' FACTUAL ALLEGATIONS

On April 5, 2006, Lisa McCusker refinanced property in Lee, Massachusetts ("Property") and signed a note that assigned Wilmington Finance, Inc. ("WF") as the lender, and Mortgage Electronic Registration Systems, Inc. ("MERS") as the mortgagee. (Compl. ¶¶ 9-10.) At some point prior to January 2013, Plaintiffs communicated with Ocwen Loan Servicing, LLC ("Ocwen")

concerning loan modification, with specific reference to the federal Making Home Affordable Modification Program ("HAMP").[1] (Id. ¶¶ 23-24.) As a result of this conversation, in January 2013, Plaintiffs initiated a HAMP relief application. (Id.) During the application process, an Ocwen employee advised Plaintiffs they could forego mortgage payments until the HAMP modification was negotiated. (Id. ¶¶ 25-26.) Several months later, Plaintiffs' HAMP modification application was denied and Plaintiffs subsequently resumed mortgage payments. (Id. ¶¶ 27-29.)

Thereafter, around July 2, 2013, Plaintiffs' most recent mortgage payment was returned to them by Ocwen, and the Plaintiffs were then instructed by Ocwen to discuss alternatives to foreclosing on their property. (Id. ¶¶ 29-30.) On August 13, 2013, Plaintiffs' legal counsel notified Ocwen that Plaintiffs were pursuing a dispute concerning their mortgage and, further, that all communication with Plaintiffs should be done through their counsel. (Id. ¶¶ 31-32.) Nevertheless, Ocwen continued to contact Plaintiffs regarding their mortgage debt and threatened foreclosure. (Id. ¶¶ 32-33.) In response to Ocwen's continued attempts to contact Plaintiffs, Plaintiffs' counsel sent Ocwen a Demand Letter pursuant to ch. 93A on December 2, 2013. (Id. ¶ 33.) Plaintiffs further allege that Ocwen's attempts to collect their debt has caused substantial emotional distress to Plaintiff Lisa McCusker, resulting in physical symptoms, such as loss of sleep and nausea. (Id. ¶ 61.)

### III. LEGAL STANDARD

A party's Rule 12(b)(6) motion to dismiss challenges the ability of an opponent's complaint to state a claim. Ellis v. Viles, 2010 WL 6465282, at *3 (D. Mass. Aug. 26, 2010). To survive, the complaint must allege facts that "raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation omitted). Thus, the factual allegations in the

---

[1] "HAMP is a federal program intended to encourage lenders and loan servicers to offer loan modifications to certain eligible borrowers." Biltcliffe v. CitiMortgage, Inc., 772 F.3d 925, 928 n.2 (1st Cir. 2014).

complaint must be specific enough to cross "the line from conceivable to plausible." Bell Atlantic, 550 U.S. at 570; see Ashcroft v. Iqbal, 556 U.S. 662, 678 ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.").

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Determining whether a complaint states a plausible claim for relief [is]. . .a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. A court does not have to accept as true allegations in a complaint that are legal conclusions. Id. However, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. at 679. Therefore, "[i]n assessing a claim's plausibility, the court must construe the complaint in the plaintiff's favor, accept all non-conclusory allegations as true, and draw any reasonable inferences in favor of plaintiff." San Geronimo Caribe Project, Inc. v. Acevedo-Vila, 687 F.3d 465, 471 (1st Cir. 2012).

### IV.    ANALYSIS

#### A.    Fair Debt Collection Practices Act (Count I)

A plaintiff must establish three elements to prove an FDCPA violation: "'(1) that she was the object of collection activity arising from consumer debt, (2) defendants are debt collectors as defined by the FDCPA, and (3) defendants engaged in an act or omission prohibited by the FDCPA.'" O'Connor v. Nantucket Bank, 992 F. Supp. 2d 24, 30 (D. Mass. 2014) (quoting Som v. Daniels Law Offices, P.C., 573 F. Supp. 2d 349, 356 (D. Mass. 2008)); see 15 U.S.C. § 1692. Defendants argue Plaintiffs' FDCPA claim fails because Plaintiffs do not provide details concerning the dates and content of the communications sent by Ocwen after learning Plaintiffs were represented by an

3

attorney. (Deft. Mem. 17-19.) Defendants' argument is unavailing and the court therefore finds that Plaintiffs have successfully pled a violation of the FDCPA.

(1) <u>Ocwen's status as a debt collector</u>

A "debt collector" is "any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). Mortgage servicing companies qualify as debt collectors under the statute if the mortgage at issue was in default, but not being foreclosed upon, at the time they began servicing the loan. See <u>In re JPMorgan Chase Mortg. Modification Litigation</u>, 880 F. Supp. 2d 220, 243 (D. Mass. 2012) (citing <u>Bridge v. Ocwen Fed. Bank, FSB</u>, 681 F.3d 355, 359 (6th Cir. 2012)); <u>Speleos v. BAC Home Loans Servicing, L.P.</u>, 824 F. Supp. 2d 226, 232-233 (D. Mass. 2011). Here, the court accepts the Complaint's assertion that the loan was in default when Ocwen received it, thereby qualifying Ocwen as a debt collector under the FDCPA.[2] <u>See</u> 15 U.S.C. § 1692a(6); <u>In re JPMorgan Chase</u>, 880 F. Supp. 2d at 243. The court views the contradicting statements by Plaintiffs as to when the loan went into default (complaint v. memorandum) as an unintentionally created inconsistency. The Plaintiffs will be obligated to notify the Court and the opposing party by pleading if, in fact, the complaint is in error by stating that the loan was assigned to Ocwen after it was in default.[3]

---

[2] Plaintiffs are bound by information set forth in their Complaint to the extent it conflicts with information provided in their subsequently-filed memoranda of law. See <u>Schott Motorcycle Supply, Inc. v. American Honda Motor Co., Inc.</u>, 976 F.2d 58, 61 (1st Cir. 1992) ("'A party's assertion of fact in a pleading is a judicial admission by which it normally is bound throughout the course of the proceeding.'"(quoting <u>Bellefonte Re Insurance Co. v. Argonaut Insurance Co.</u>, 757 F.2d 523, 528 (2d Cir. 1985))). Defendants argue that Plaintiffs' ch. 93A and FDCPA claims rely on contradicting facts regarding when the Plaintiffs were in default and therefore should both be dismissed. (Dkt. No. 41, Defendants Reply to Plaintiff's Opposition to Dismiss the Complaint. ("Deft. Reply") 1-3.) In their Complaint, Plaintiffs state that Ocwen was assigned to Plaintiffs' loan after it was in default. (Compl. ¶ 38). In their opposition motion, Plaintiffs alter their facts to some degree, stating that "Ocwen baited the [Plaintiffs] into a default." (Pltf. Mem. 9.) To the extent that these factual assertions conflict, the court disregards the arguably conflicting information provided by Plaintiffs in their memorandum, and the court therefore relies solely on the factual allegations provided by Plaintiffs in their Complaint. See <u>Schott</u> 976 F.2d ay 61. Accordingly, for the purposes of this opinion, the court assumes the veracity of Plaintiff's factual allegations that Ocwen was assigned to Plaintiffs' loan after it was in default.

[3] Federal Rule of Civil Procedure 11 provides in relevant part: "The signature of an attorney or party constitutes a certificate by the signer that...to the best of the signer's knowledge, information, and belief formed after reasonable

(2) Ocwen's actions

Under the FDCPA, it is unlawful for debt collectors to attempt to communicate with debtors in connection with the collection of a debt, when they know the debtor is represented by an attorney with respect to such debt. See 15 U.S.C. § 1692c(a)(2). When pleading a violation of the FDCPA, plaintiffs are "not required to attach a copy of every communication sent to [them] by defendant; a plausible factual allegation is sufficient." Stagikas v. Saxon Mortg. Services, Inc., 795 F. Supp. 2d 129, 138 (D. Mass. 2011); see e.g. Harrington v. CACV of Colo., LLC, 508 F. Supp. 2d 128, 132 (D. Mass. 2007).

Here, Plaintiffs state their counsel notified Ocwen they were bringing suit concerning their mortgage, and all future correspondence should be directed to their counsel. (Id. ¶ 31.) Plaintiffs also allege Ocwen continued to contact Plaintiffs regarding their loan by telephone and in writing. (Id. ¶ 32.) Therefore, Ocwen, as a debt collector, violated the FDCPA by communicating with Plaintiffs in connection with the collection of a debt, after learning Plaintiffs were represented by an attorney. See 15 U.S.C. § 1692c(a)(2). Accordingly, given that other elements have been sufficiently pled, the court denies Defendant's motion to dismiss with respect to Plaintiffs' FDCPA claim. See Stagikas, 795 F. Supp. 2d at 138; Harrington, 508 F. Supp. 2d at 132.

B. **Massachusetts Fair Debt Collection Act & MASS. GEN. LAWS ch. 93A (Counts II & III)**

Defendants argue there is no private right of action for a MFDCA claim. Defendants also argue that Plaintiffs' ch. 93A allegations fail because Plaintiffs have not, through their pleadings, demonstrated there was bad faith, sufficient economic injury, or emotional distress. (Deft. Mem. 13-

---

inquiry it is well grounded in fact....If a pleading, motion, or other paper is signed in violation of this rule, the court...shall impose upon the person who signed it...an appropriate sanction." Fed. Rule Civ. Proc. 11. The standard for deciding when to impose Rule 11 sanctions is "one of reasonableness under the circumstances." Advisory Committee's Note to Fed. Rule Civ. Proc. 11. A court may specifically consider attorneys' fees as a sanction "when the losing party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 259 (1975) (quoting F.D. Rich Co. v. United States ex rel. Industrial Lumber Co., 417 U.S. 116, 129 (1974)).

17.) The court agrees with Defendants, finding there is no private right of action for a MFDCA claim, and therefore grants Defendants' motion to dismiss the MFDCA claim to the extent that it was asserted as a separate and independent count. However, as the court recognizes that a violation of the pertinent provisions of the MFDCA constitutes a violation of ch. 93A, the court denies Defendants' motion to dismiss with respect to the ch. 93A claim.

The MFDCA states: "[n]o one who is a creditor or an attorney for a creditor, or an assignee of a creditor, of a natural person present or residing in Massachusetts who has incurred a debt primarily for personal, family or household purposes shall collect or attempt to collect such debt in an unfair, deceptive or unreasonable manner." MASS. GEN. LAWS ch. 93 § 49. As stated, the MFDCA does not provide a private right of action and cannot survive a motion to dismiss. See, e.g., Downey v. Wells Fargo Bank, N.A., 2014 WL 3510510, at *9 (D. Mass. July 11, 2014). Instead, failing to comply with the MFDCA constitutes "an unfair or deceptive act or practice" under ch. 93A, and therefore constitutes a violation of the Massachusetts consumer protection statute. See MASS. GEN. LAWS ch. 93A; Kassner v. Chase Home Finance, LLC, 2012 WL 260392, at *9 (D. Mass. Jan. 27, 2012) (holding debt collection claims brought under the MFDCA do not provide private rights of action, but the claims can be the basis for derivative liability under ch. 93A).

Unfair conduct under ch. 93A is determined by weighing multiple factors, including: "(1) whether the practice is within at least the penumbra of some common-law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; and (3) whether it causes substantial injury to consumers (or competitors or other businessmen)." Brown v. Bank of America, Nat., Ass'n, 67 F. Supp. 3d. 508, 514 (D. Mass. 2014) (citing Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc., 552 F.3d 47, 69 (1st Cir.2009)). Massachusetts state court judges have found the "unfair conduct" element of the statute is fulfilled when debt collectors continue to contact debtors after receiving notification that those debtors are represented by an

attorney.[4] See MASS. GEN. LAWS ch. 93, § 49; see, e.g., Mack v. Wells Fargo Bank, N.A., 2011 WL 6975961, at *2 (Mass. 2011); Brow v. Stanton, 429 N.E.2d 60 (Mass. App. Ct. 1981);

Here, Plaintiffs allege in their Complaint that Ocwen continued to contact them, by telephone and in writing, after receiving notification they were being represented by an attorney. (Compl. ¶¶ 31-32.) Therefore, Ocwen's attempts to communicate with Plaintiffs failed to comply with the MFDCA, which is an unfair practice and violation of ch. 93A. See Brow, 429 N.E.2d 60; Kassner, 2012 WL 260392, at *9. Accordingly, the court denies Defendants' motion to dismiss with respect to Plaintiffs' ch. 93A claim stemming from a MFDCA violation.

C. Lack of Standing (Count IV)

In order to challenge the assignment of their mortgage, plaintiffs must establish that they (1) have a personal stake in the outcome of the case, and (2) are questioning the foreclosing entity's status as mortgagee of their property. See Culhane v. Aurora Loan Servs. of Neb., 708 F.3d 282, 290 (1st Cir. 2013). Defendants argue Plaintiffs are unable to challenge the assignment of their mortgage, as they contend it is valid under Massachusetts law.[5] (Deft. Mem. 3-8.) The court finds that, although Plaintiffs have a personal stake in the outcome of this case,[6] their claim ultimately fails and is therefore dismissed because they are challenging a valid assignment of the mortgage.

---

[4] The Massachusetts definition of a debt collector is "any person who uses an instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of a debt, or who regularly collects or attempts to collect, directly or indirectly, a debt owed or due or asserted to be owed or due another." Mass. Gen. Laws ch. 93, § 24. "A loan servicer will become a debt collector…if the debt was in default or treated as such when it was acquired." In re JPMorgan Chase Mortg. Modification Litigation, 880 F. Supp. 2d at 242 (quoting Bridge, 681 F.3d at 360 n.4).

[5] Defendants additionally argue Plaintiffs have not alleged enough facts to sufficiently support their claim that Defendants were invalidly or ineffectively assigned their mortgage, and that lack of standing is not a ripe or valid cause of action in Massachusetts. (Deft. Mem. 3-8.) The court agrees with Defendants that Plaintiffs are challenging a valid assignment of the mortgage, and therefore the lack of standing claim is dismissed. As a result, the court declines to pass judgment on the merits of Defendant's other arguments in support of their motion to dismiss Plaintiffs' lack of standing claim.

[6] The "personal stake" requirement is demonstrated when plaintiff "establish[es] each part of a familiar triad: injury, causation, and redressability." Culhane, 708 F.3d at 289 (quoting Katz v. Pershing, LLC, 672 F.3d 64, 71 (1st Cir. 2012)); see Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 564 (1992) (holding the injury requirement is satisfied if plaintiff personally suffers actual or imminent harm, and the causation requirement is satisfied if there is a "causal connection between the injury and the conduct complained of"); Katz, 672 F.3d at 71 (finding the redressability requirement is

Generally speaking, plaintiffs can bring claims challenging a foreclosing entity's status as mortgagee of their property. See Wilson v. HSBC Mortg. Services, Inc., 744 F.3d 1, 10 (1st Cir. 2014); see, e.g., Woods v. Wells Fargo Bank, N.A., 733 F.3d 349, 354 (1st Cir. 2013) (finding a plaintiff can allege "the assigning party never possessed legal title and, as a result, no valid transferable interest ever exchanged hands"). However, plaintiffs are only able to bring these claims if they are challenging a mortgage assignment as invalid or ineffective. Culhane, 708 F.3d at 291. It follows that plaintiffs cannot bring a claim if a mortgage is valid and binding. See Barcelos v. Deutsche Bank Nat. Trust Co., 10 N.E.3d 1145 (Mass. App. Ct. 2014). A mortgage is valid and binding if it is "executed before a notary public…by a person purporting to hold the position of…secretary…or other similar office or position, including assistant to any such office or position of the entity holding such mortgage." MASS. GEN. LAWS ch. 183 § 54B.

In Massachusetts, a mortgage will remain valid and binding even if it is divided or transferred between parties. See, e.g., Eaton v. Fed. Nat. Mortgag. Ass'n, 969 N.E.2d 1118, 1124 (Mass. 2012) ("[I]n Massachusetts the mere transfer of a mortgage note does not carry with it the mortgage…the mortgage and the underlying note can be split."). Specifically, as a mortgage in Massachusetts contains two aspects—1) the legal title to the mortgage property and (2) the security interest for the underlying note—these distinct facets can separately and simultaneously belong to two individuals/entities while the mortgage remains valid and binding. Id. ("[A] mortgage separated from the underlying debt that it is intended to secure is a mere technical interest." (internal quotation marks and corresponding citation omitted)).

In Barcelos v. Deutsche Bank Nat. Trust Co., the plaintiff claimed that the assignment of her mortgage was ineffective because the original lender no longer held the mortgage note at the time

---

established if plaintiff "'show[s] that a favorable resolution of her claim would likely redress the professed injury.'" (quoting Antilles Cement Corp. v. Fortuño, 670 F.3d 310, 318 (1st Cir. 2012))). Plaintiffs' allegations have fulfilled these elements and therefore establish they have a personal stake in the outcome of this case. See Katz, 672 F.3d at 71.

8

the mortgagee assigned the mortgage to the defendant. See 10 N.E.3d 1145. The original lender of the plaintiff's mortgage assigned a mortgagee and subsequently sold its interest in the mortgage note to another company. See id. Following the sale of the original lender's interest, the mortgagee sold the mortgage to the defendant. See id. The Barcelos Court held the mortgage was validly transferred to the defendant, and therefore the defendant could foreclose on the plaintiff's mortgage. See id.

Here, as in Barcelos, Plaintiffs allege that Defendant invalidly gained title to their mortgage and therefore cannot collect on the note or foreclose on their mortgage. (Compl. ¶¶ 13-14.) Plaintiffs contend that Ocwen cannot foreclose on their mortgage because, at the time MERS transferred the mortgage to U.S. Bank and Ocwen, WF no longer held the mortgage. (Plf. Mem. 6-7 (asserting that assignment to note is "invalid, ineffective, or void").) Contrary to Plaintiffs' contention, even though WF did not have any remaining interest in the mortgage as of June 2006, MERS nevertheless had the authority to transfer the mortgage to U.S. Bank and Ocwen in June 2014 for the reasons that follow. See Barcelos, 10 N.E.3d 1145.

On April 5, 2006, the mortgage identifies WF as the lender and MERS as the mortgagee. (Deft. Mem. Ex. B 1-2.) In May and June of 2006, WF transferred its ownership interest and servicing rights in the mortgage note to Aurora Commercial Corp. ("Aurora") and Chase Home Finance, LLC ("Chase"). (Pltf. Mem. Ex. A.) WF's transfer of its ownership and servicing rights in the mortgage note was independent from the mortgage, similar to that which lawfully occurred in Barcelos. See 10 N.E.3d 1145. Therefore, even though WF sold its interest to Aurora and Chase, MERS still retained the authority, at this time, to transfer the mortgage in equitable trust. See id. On June 24, 2014, MERS validly transferred its beneficial interest in the mortgage to U.S. Bank, and loan servicer Ocwen, by executing the agreement before an assistant secretary and notary public.

(Deft. Mem. Ex. C.)[7] See MASS. GEN. LAWS ch. 183 § 54B. MERS validly and effectively transferred the mortgage to U.S. Bank and Ocwen because, in Massachusetts, a mortgage can be split between the legal title to the mortgage and the security interest for the underlying note. See Eaton, 969 N.E.2d at 1124. Thus, Plaintiffs are unable to bring a claim challenging the valid and effective transfer of the mortgage to Ocwen. See MASS. GEN. LAWS ch. 183 § 54B; Eaton, 969 N.E.2d at 1124; Barcelos, 10 N.E.3d at 1145. Consequently, Plaintiffs' "lack of standing" claim is dismissed.

### D. Breach of the Covenant of Good Faith and Fair Dealing (Count V)

Defendants argue no valid contract exists between Plaintiffs and Ocwen, and therefore Defendants were unable to have breached the covenant of good faith and fair dealing. (Deft. Mem. 20-22.) The court agrees with Defendants.

"Every contract implies a covenant of good faith and fair dealing between the parties to it." Dill v. American Home Mortg. Servicing, Inc., 935 F.Supp.2d 299, 303 (D. Mass. 2013). This covenant only "governs conduct of parties after they have entered into a contract; without a contract, there is no covenant to be breached." Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc., 412 F.3d 215, 230 (1st Cir. 2005). Loan servicers owe no duty to plaintiffs arising out of mortgage contracts because loan servicers are technically not parties to the mortgage. See, e.g., Dill. 935 F.Supp.2d at 303. Loan servicers hold "no beneficial ownership interest in the mortgage, or in the debt secured thereby; instead, [their] role [is] strictly as servicing agent" for the mortgagee and the note holder. Haskins v. Deutsche Bank Nat. Trust Co., 19 N.E.3d 455, 459 n.10 (Mass. App. Ct. 2014).

---

[7] Although "there is no requirement that the pleader attach a copy of the writing on which his action or defense is based[,] . . . when plaintiff fails to introduce a pertinent document as part of his pleading, defendant may introduce the exhibit as part of his motion attacking the pleading." Fudge v. Penthouse Int'l, Ltd., 840 F.2d 1012, 1015 (1st Cir. 1988). Here, Defendant attached the mortgage and the assignment, upon which the causes of action were based, and these may fairly be considered by the court at this stage. See id.

Here, Ocwen is the loan servicer for mortgagee U.S. Bank. (Deft. Mem. Ex. C.) Therefore, Ocwen, as a loan servicer, is not a party to Plaintiffs' mortgage and owes no duty to Plaintiffs arising out of their mortgage contract. See Dill, 935 F.Supp.2d at 303. It follows that no valid contract ever existed between Ocwen and Plaintiff, which means there was never an implied covenant of good faith and fair dealing which could have been breached. See Mass. Eye & Ear Infirmary, 412 F.3d at 230. Consequently, Plaintiffs' breach of the covenant of good faith and fair dealing claim is dismissed.[8]

### E. Intentional infliction of emotional distress (Count VI)

Defendants argue Ocwen did not intentionally inflict emotional distress on Plaintiff Lisa McCusker because Ocwen's conduct does not meet the Massachusetts standard of "extreme and outrageous." (Deft. Mem. 9-12.) Defendants are correct.

Under Massachusetts law, to prove a claim for IIED the claimant must successfully demonstrate:

> (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous, was beyond all possible bounds of decency and was utterly intolerable in a civilized community; (3) that the actions of the defendant were the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe and of a nature that no reasonable man could be expected to endure it.

Agis v. Howard Johnson, Co., 355 N.E.2d 315, 318-319 (Mass. 1976).

Plaintiffs have not successfully pled the "extreme and outrageous conduct" element of an IIED claim unless the conduct in question "go[es] beyond all possible bounds of decency." Polay v.

---

[8] Plaintiffs additionally assert there is no valid transfer because there are no recorded documents in the Middle District Registry of Deeds that demonstrate Ocwen acquired a beneficial interest in the mortgage. (Compl. ¶13.) This fact, even if true, has no bearing on the court's ruling on this issue. The court is not aware of any requirement that in order for Ocwen to service the loan there has to be a recorded document stating Ocwen acquired a beneficial interest in the mortgage. See generally Haskins, 19 N.E.3d at 459 n.10 (finding loan servicers hold "no beneficial ownership interest in the mortgage, or in the debt secured thereby; instead, [their] role [is] strictly as servicing agent" for the mortgagee and the note holder). Further, the court observes Ocwen was, in fact, named as a loan servicer in MERS' assignment of the mortgage to U.S. Bank. (Deft. Mem. Ex. C.)

McMahon, 10 N.E.3d 1122, 1128 (Mass. 2014). "[I]nsults, indignities, threats, [and] annoyances" do not constitute conduct that is "extreme and outrageous." Foley v. Polaroid Corp., 508 N.E.2d 72, 82 (Mass. 1986). Even if a plaintiff is able to show that a defendant acted with intent that is "tortious or even criminal, or…intended to inflict emotional distress," it does not necessarily follow that the "extreme and outrageous conduct" element is fulfilled. Id.

Courts applying Massachusetts law have consistently dismissed IIED claims when defendants communicate with plaintiffs regarding foreclosure and/or loan modification because this behavior does not rise to the level of "extreme and outrageous." See, e.g., Koufos v. U.S. Bank, N.A., 939 F. Supp. 2d 40, 53 (D. Mass. 2013) (holding "continued threats" to collect upon a debt and foreclose a property are insufficient to state a claim of IIED); Akar v. Federal Nat. Morg. Ass'n, 845 F. Supp. 2d 381, 385 (D. Mass. 2012) (finding false promises that a foreclosure sale will be postponed ultimately do not qualify as "extreme and outrageous" behavior). District of Massachusetts Courts have also dismissed IIED claims when defendants mishandle or deny HAMP applications because this behavior does not qualify as "extreme and outrageous." See, e.g., Payton v. Wells Fargo Bank, N.A., 2013 WL 782601, at *4 (D. Mass. Feb. 28, 2013) (finding a defendant's conduct "mishandl[ing] [Plaintiffs] HAMP application and [then] schedul[ing] a foreclosure" does not satisfy the "extreme and outrageous" conduct standard); Young v. Wells Fargo Bank, N.A., 717 F.3d 224, 240 (1st Cir. 2013) (holding emotional stress, anxiety and loss of sleep as a result of defendants mishandling of plaintiffs loan modification do not fulfill the high threshold of an IIED claim).

Although Plaintiffs' allegation that Ocwen suggested Plaintiffs cease mortgage payments while their HAMP application was being considered, if true, likely constitutes a questionable business tactic, this type of conduct does not meet the "extreme and outrageous" threshold. See Payton, 2013 WL 782601 at *4; Young, 717 F.3d at 240. Moreover, the fact that Ocwen had entered

into a Consent Judgment in December 2013, which required them to "disclose and provide accurate information to borrowers," does not demonstrate their conduct in this case was "extreme and outrageous." (Compl. ¶ 17-20); see Polay, 10 N.E.3d at 1128. For these reasons, the court grants Defendants' motion to dismiss with respect to Plaintiffs' IIED claim.

## V. CONCLUSION

For these reasons, the court DENIES Defendants' motions to dismiss with respect to Plaintiffs' Fair Debt Collection Practices Act claim and Plaintiffs MASS. GEN. LAWS ch. 93A claim. (Dkt. No. 35.) The court ALLOWS Defendants' motion to dismiss with respect to Plaintiffs' Massachusetts Fair Debt Collection Act claim insofar as it is a separate and independent count, Plaintiffs' lack of standing claim, Plaintiffs' breach of the covenant of good faith and fair dealing claim, and Plaintiff Lisa McCusker's intentional infliction of emotional distress claim. (Dkt. No. 35.)

It is So Ordered.

                                                     /s/ Mark G. Mastroianni
                                                    MARK G. MASTROIANNI
                                                    United States District Judge